UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARIA AVILA, | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | ) |
| | )    **No. 06 CV 2947** |
| MARIA PAPPAS, Cook County Treasurer; | ) |
| VICKY PAPPAS; MICHAEL SHINE; | )    **Judge Joan H. Lefkow** |
| RICHARD LANER; COOK COUNTY, | ) |
| | ) |
|     **Defendants.** | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Maria Avila, has filed an eight-count complaint against defendants, Cook County Treasurer Maria Pappas; three employees of the Treasurer's Office, Vicky Pappas, Michael Shine, and Richard Laner; and Cook County. She alleges claims under 42 U.S.C. § 1983 against the individual defendants for substantive due process violations (Count I), equal protection violations (Count II), and civil conspiracy (Count III), as well as a *Monell* claim under § 1983 against Maria Pappas as Cook County treasurer (Count IV), and state law claims for malicious prosecution against Vicky Pappas and Michael Shine (Count V), intentional infliction of emotional distress against Vicky Pappas and Michael Shine (Count VI), respondeat superior against Cook County (Count VII), and indemnification pursuant to 745 Ill. Comp. Stat. 10/9-102 against Cook County (Count VIII).[1]

Before the court is defendants' motion for summary judgment. For the following reasons, the motion [#103] will be granted.

---

[1] The court has jurisdiction to hear this case pursuant to 28 U.S.C. §§ 1331 and 1343 for the federal civil rights claim and 28 U.S.C. § 1367(a) for the supplemental state law claims.

## STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine issue of fact exists, the court must pierce the pleadings and assess the proof as presented in the pleadings, depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c) & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact is one that might affect the outcome of the suit. *Insolia*, 216 F.3d at 598–99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver* v. *Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## BACKGROUND[2]

Avila was employed as a clerk at the Office of the Cook County Treasurer for about 21 years, from February 1984 until her termination in June 2005. On the evening of Thursday, May 26, 2005, Avila phoned her friend and coworker, Geneva Fitch, and discussed various

---

[2] Unless otherwise noted, plaintiff has admitted the following facts.

stresses at work, including the possibility that Avila might lose her job at an upcoming disciplinary hearing regarding allegations she had been insubordinate and made errors in her work. During that conversation, Avila told Fitch that she felt like she could "go postal" on coworkers Artemis Papageorgeou, Michael Shine, and William Kouruklis, because of animosity towards her from management and her feeling that they were targeting her. Avila also said that if Fitch was in the room at the time, she should duck.

The three individuals to whom Avila referred were supervisory employees at the Treasurer's Office. Papageorgeou was an assistant supervisor and had made the allegations underlying the upcoming disciplinary hearing, Shine was Chief Deputy Treasurer and in charge of personnel, and Kouruklis was Deputy County Treasurer in charge of operations.

Although Fitch initially thought that Avila had just been blowing off steam, she was somewhat concerned that Avila might actually carry out the threat. According to Avila, when she made the comment about "going postal" to Fitch, Fitch said that Avila should not say that, and Avila told her, "You should know me by now . . . I'm only joking." Pl.'s SoF ¶8. According to Fitch, Avila never said that she was joking or just blowing off steam. The two women planned to meet the following morning for breakfast before work.

The next morning, May 27, 2005, Avila did not show up for work and did not meet Fitch for breakfast. This worried Fitch. Fitch told Emma Sandei, the Deputy Treasurer of Special Projects, about the call she had received from Avila the night before. Sandei felt that because of Avila's personal and family problems, it was possible that Avila could act on her threat. That afternoon, Sandei told Shine what she had learned.

After speaking with Sandei, Shine went to speak with Fitch about what had happened. Fitch related the conversation almost exactly the same way that Sandei had. Treasurer Maria Pappas first received information from Shine about Avila's threat on Friday before Memorial Day Weekend 2005, when Maria Pappas was out of the country.

The next business day, Tuesday, May 31, 2005, Sandei was visibly upset and told Kouruklis about the conversation between Avila and Fitch. Kouruklis, who was very concerned for his own well-being and that of his wife, immediately called security and asked that the building's doors be monitored and instructed security not to let Avila in the building. When she learned of Avila's remarks, Papageorgeou became very worried and started to cry. By the end of the day, most of the employees in the Treasurer's Office had learned of the threat and become very scared, with some people crying.

Maria Pappas, who had returned to the office by Wednesday, June 1, 2005, tried to calm her staff down because there was hysteria in the office and people crying. Some employees were afraid to be near the window where Kouruklis sat and moved to different locations out of concern for their safety.

At first, Shine did not want to overreact or move too quickly in response to the threat, but after talking with friends and family members, he realized that he could not take the threat too lightly. Defendant Richard Laner is an attorney employed by a private firm who has represented the Cook County Treasurer's Office in labor and employment matters for many years. Laner told Shine to treat the threat as the most serious thing possible and take every precaution necessary.

After Shine informed Laner that Avila was already scheduled for a hearing on charges of insubordination, Laner suggested that the notice be modified to include the threat as grounds for termination at the hearing. Laner and Shine also discussed the necessity of having some kind of police protection or security present whenever Avila came into the building.

Shine called the police on the morning of Tuesday, May 31, 2005 to report the threat. Shine initially called the Sheriff's Police and then called the Chicago Police Department. A Chicago Police Officer came to the County Building and interviewed the three targets of Avila's threat.

Avila's disciplinary hearing took place on June 2, 2005 with two Cook County Sheriff's officers present as a security measure. Laner was the employer's representative at the hearing. Kouruklis testified and recommended that Avila be terminated. Papageorgeou, who was crying and very upset, did not want to participate in the hearing because she knew that Avila would be present. Treasurer Maria Pappas did not attend the hearing or otherwise make any recommendations as to the discipline to be imposed. After the hearing, Avila was terminated from the Treasurer's Office. Peter Verros, assistant legal counsel at the time and the hearing officer at Avila's disciplinary hearing, made the decision to terminate Avila.

On approximately June 2, 2005, Detective Eugene Schleder of the Chicago Police Department was assigned to handle the case as the lead detective. He contacted Avila a few weeks after the disciplinary hearing and told her that she would have to come down to the station to talk with her about the threats she had made. When he got the case, Schleder had to reclassify it from "assault, aggravated handgun, protected employee" to "telephone threat," because the beat officer had misclassified it. Def.'s SoF ¶ 52. Schleder initially tried to call Papageorgeou,

5

Shine, and Kouruklis to see if they wanted to press charges against Avila. He was unable to reach Shine and Kouruklis, but did speak to Papageorgeou, who indicated that she would have to check with the others at the Treasurer's Office before determining whether to press charges against Avila. Schleder phoned Shine on a number of occasions in June but was unable to speak with him. Instead, every time he called Shine, Schleder received a phone call from Vicky Pappas, who said she would act as an intermediary and be involved in all the interviews with employees because she was concerned that witnesses would not cooperate with police out of fear that Avila might go after them.

Schleder initially told Vicky Pappas that he thought Avila could probably only be charged with a misdemeanor and that the charges would be hard to prove because they were based on hearsay. In response, Vicky Pappas said that Shine was a public official and Avila could thus be charged with threatening a public official, a felony under Illinois law.[3] Both Vicky Pappas and Shine told Schleder that Shine was a public official because he was appointed by the treasurer on December 1, 1998. Based on these conversations, Schleder came to believe that Avila's threat could be classified as a felony for "threatening a public official." Def.'s SoF ¶ 53.

---

[3] Under 720 Ill. Comp. Stat. 5/12-9, threatening a public official is a Class 3 felony. The offense consists of "knowingly and willfully deliver[ing] or convey[ing], directly or indirectly, to a public official by any means a communication . . . containing a threat that would place the public official . . . in reasonable apprehension of immediate or future bodily harm." 720 Ill. Comp. Stat. 5/12-9(a). The statute defines a public official as "a person who is elected to office in accordance with a statute or who is appointed to an office which is established, and the qualifications and duties of which are prescribed, by statute, to discharge a public duty for the State or any of its political subdivisions or in the case of an elective office any person who has filed the required documents for nomination or election to such office." 720 Ill. Comp. Stat. 5/12-9(b).

This was Schleder's only investigation concerning the criminal statute prohibiting threats against public officials.

On June 12, 2005, Assistant State's Attorney Sanjay Patel of the felony review unit was assigned to review the case. Assistant State's Attorneys in that unit are called upon by the Chicago Police Department to review cases and determine whether felony charges should be approved. Assistant State's Attorneys make this determination by assessing the evidence, which includes interviewing witnesses, reviewing police reports and physical evidence, interviewing the defendant, and reviewing the relevant statute. Upon his arrival at Area 4 police headquarters on July 12, 2005, Patel first spoke with Schleder. Later that day, he spoke with Fitch, Shine, Vicky Pappas, Peter Verros, Christina Kallkiris, and David Byrnes.

Patel had never before worked on a case involving threatening public officials and consulted his supervisor Darren O'Brien regarding the approval of felony charges against Avila. They both believed that Shine met the definition of a public official under the relevant statute, 720 Ill. Comp. Stat. 5/12-9.

After reviewing the police reports and interviewing witnesses, as well as possibly conducting legal research,[4] Patel believed that Avila had committed the offense of threatening a public official. Patel approved felony charges on July 13, 2005.

Vicky Pappas did not have any input into Patel's decision to charge Avila and did not instruct or insist that she be charged with a particular crime. At no time did either Shine, Vicky Pappas, or Maria Pappas ever recommend or suggest to Sanjay Patel what the charges should be

---

[4] Patel testified at his deposition that in his review of the charges against Avila, he may have conducted legal research on the criminal statute or relevant case law but was not sure if he had done so.

in this case or whether he should approve or deny charges. Lerner never spoke to anybody at the Cook County State's Attorney's Office or the Chicago Police Department about the possibility of criminal charges against Avila.

Avila's criminal case went to trial on December 6, 2005. After a trial, the court granted a motion for a directed verdict and dismissed the case, concluding that the felony of threatening a public official was not supported by the facts presented against Avila. Specifically, the court found that the there was no evidence that plaintiff knew her comments would be conveyed, directly or indirectly, to a public official, and that Shine could not be construed as a public official as that term is defined under the statute.

## DISCUSSION

Defendants argue that Avila has failed to present evidence sufficient to establish essential elements of each of her claims. In response, Avila concedes that her "[going] postal remark . . . was abominable and unjustifiable" but that she is not challenging her employer's decision to terminate her for those statements. Pl.'s Resp. at 1. Rather, Avila contends, her claims are predicated on the theory of a "shocking plan and conspiracy amongst the Defendants to have Plaintiff falsely charged with a felony crime . . . for an alleged violation of 720 ILCS 5/12-9 of the Illinois criminal code, which prohibits threatening a 'public official' as that term is defined in the statute." *Id.* According to plaintiff,

> The record establishes that Plaintiff was charged with threatening a public official because the Defendants falsely and maliciously represented to the Chicago Police Department that Defendant Michael Shine was a public official protected by 720 ILCS 4/12-9. This law, however, clearly states that a public official is a person who is elected to an office in accordance with a statute, or who is appointed to an[] office which is established by law, and the qualifications and duties of the office are prescribed by statute.

8

*Id.* Avila argues that because defendants have admitted that Shine's position did not meet the criteria set out in 720 Ill. Comp. Stat. 4/12-9, they never had any basis to support their assertion that Shine was a public official under that statute.

Avila's theory of the case relies particularly on her assertion that the criminal charges were filed against her only because Vicky Pappas told Detective Schleder that Shine was a public official covered by the statute and "*insiste*[*d*] that the felony charge applied." Pl.'s SoF ¶ 21 (emphasis added). While there is support in the record for Avila's contention that Vicky Pappas told Schleder that Shine was a public official and that the statute applied, Avila has cited no evidence, either in her Local Rule 56.1 statement of additional facts or in her response memorandum, to support her contention that Vicky Pappas *insisted* that the charge applied. Moreover, there is no indication in the record that Vicky Pappas or any of the defendants had any involvement in the Cook County State's Attorney's Office's decision to approve criminal charges against Avila. On the contrary, the evidence indicates that Assistant State's Attorney Patel independently evaluated the charges, concluded that Avila had committed the offense of threatening a public official, and approved the felony charge against Avila.[5] Additionally, even if there were evidence that Vicky Pappas, Shine, and the other defendants had gone to extraordinary lengths to ensure that Avila was charged under 720 Ill. Comp. Stat. 4/12-9 (and, to be clear, Avila has not provided evidence to support such a conclusion), there would still be no

---

[5] Indeed, Avila admitted that "Vicky Pappas did not have any input into Assistant State's Attorney Patel's decision to charge Maria Avila, and did not tell him or insist that she be charged with a particular crime." Pl.'s Resp. to Defs.' SoF ¶ 69. (In full, Avila's response to paragraph 69 was "Not disputed that Vicky Pappas and ASA Patel so testified," *id.*; such a response constitutes an admission under Local Rule 56.1 both because it fails to dispute the asserted fact and because it fails to cite competent evidence controverting the fact. N.D. Ill. R. 56.1.)

9

evidence (at least, none that Avila has pointed out) indicating that they did so knowing that Shine was not actually covered by the statute.[6]

As discussed below, these shortcomings are fatal to each of Avila's claims.

**I. § 1983 Substantive Due Process Claim**

A substantive due process claim involves "the exercise of governmental power without justification," and is often described as "an abuse of government power which 'shocks the conscience.'" *Tun* v. *Whitticker*, 398 F.3d 899, 902 (7th Cir. 2005) (quoting *Rochin* v. *California*, 342 U.S. 165, 209, 72 S. Ct. 205, 96 L. Ed. 183 (1952)). It is well established that "actions violate the due process clause only if they can properly be characterized as 'conscience shocking, in a constitutional sense.'" *Id.* at 902–03 (quoting *County of Sacramento* v. *Lewis*, 523 U.S. 833, 847, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998)).

In her response to the motion for summary judgment as to the § 1983 substantive due process claim, Avila asserts only that she "*alleges* that the Defendants targeted her and had her arrested and prosecuted as a felon based on the fabricated assertion that Michael Shine was a public official." Pl.'s Resp. at 6 (emphasis added). While such an assertion might suffice to

---

[6] In her response, Avila states that "in their depositions, the *Defendants, including Vicky Pappas, repeatedly admitted that Michael Shine's position was not established by statute*, and the qualifications and duties of the position are not prescribed by statute. These were key admissions, as all by themselves they show that the case against Plaintiff for violation of 720 ILCS 5/12-9 was a baseless fraud." Pl.'s Resp. at 4 (emphasis added). Avila does not support this assertion with a citation—to Vicky Pappa's deposition or elsewhere in the record—showing that Vicky Pappas herself made such admissions. While Shine did admit in his deposition that neither his position nor the qualifications and duties of his position were prescribed by statute, Avila does not cite evidence indicating that Shine believed he was not a public official under 720 Ill. Comp. Stat. 5/12-9. Avila has likewise failed to provide evidence suggesting that at the time they told Detective Schleder that Shine was a public official, either Vicky Pappas or Shine believed he was not in fact covered by the statute.

withstand a motion to dismiss, it is plainly inadequate on a motion for summary judgment, where the plaintiff is required not merely to state a valid claim but to cite specific material facts and evidence showing that there is a genuine issue for trial. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Avila cites no specific evidence to support these allegations. At most, the evidence supports the conclusion that Vicky Pappas told Detective Schleder that Shine was a public official who could be charged with threatening a public official under the Illinois statute. Plaintiff has failed to cite any evidence from which fact finder could conclude that any of the defendants' conduct, either individually or collectively, was "shocking to the conscience." Defendants' motion for summary judgment must therefore be granted as to Count I.

**II. § 1983 Equal Protection Claim**

In Count II, Avila asserts an equal protection claim, alleging that "a motivating factor in seeking to get rid of Maria Avila and bring false felony charges against her is because she is [H]ispanic and overweight." Am. Compl. ¶¶ 92–98. In her response to the defendants' motion for summary judgment, Avila indicates that her claim in Count II is a class-of-one equal protection claim. As the Seventh Circuit has explained, "a class-of-one equal protection challenge asserts that an individual has been 'irrationally singled out,' without regard for any group affiliation, for discriminatory treatment." *United States* v. *Moore*, 543 F.3d 891, 896 (7th Cir. 2008) (quoting *Engquist* v. *Or. Dep't of Agric.*, --- U.S. ----, 128 S. Ct. 2146, 2153, 170 L. Ed. 2d 975 (2008)). Such a claim is cognizable where "an individual alleges that he has been 'intentionally treated differently from others similarly situated and that there is no rational basis

for the difference in treatment.'" *Id.* at 896 (citing *Vill. of Willowbrook* v. *Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000) (per curiam)).

In order to establish a class-of-one equal protection violation, a plaintiff must show that (1) she "has been intentionally treated differently from others similarly situated," and (2) "there is no rational basis for the difference in treatment or the cause of the differential treatment is a 'totally illegitimate animus' toward the plaintiff by the defendant." *McDonald* v. *Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004). To be considered "similarly situated," a class-of-one challenger and her comparators must be "prima facie identical in all relevant respects or directly comparable . . . in all material respects." *Moore*, 543 F.3d at 896 (internal citation and quotation marks omitted). The Seventh Circuit has commented that while "this is not a 'precise formula,' it is nonetheless 'clear that similarly situated individuals must be very similar indeed.'" *Id.* at 896–97 (quoting *McDonald*, 371 F.3d at 1002).

Here again, Avila's response to defendants' motion for summary judgment is that "Plaintiff *alleges* that she was singled out by the Defendants for termination and felony criminal prosecution because she was Hispanic, and for other personal reasons including the fact that she was overweight."[7] Pl.'s Resp. at 7 (emphasis added). Avila has cited no evidence, however, that either (1) she has been intentionally treated differently from others similarly situated, and (2) that there is no rational basis for such a difference in treatment. Indeed, she has failed to even

---

[7] Avila also argues that because "[t]here is no evidence that the Defendants similarly singled out non-Hispanic persons," a "jury could find that Plaintiff was singled-out and a member of a class of one who was denied equal protection of the laws." Pl.'s Resp. at 7. Citing the absence of evidence likewise does not satisfy Avila's burden. Plaintiff has the burden to demonstrate unequal treatment.

identify a similarly situated individual. Defendants' motion for summary judgment must therefore be granted as to Count II.

### III. § 1983 Civil Conspiracy Claims

In Count III, Avila alleges that "Defendants conspired and agreed to seek baseless felony charges based on their phony contention that Defendant Michael Shine was a public official" and, consequently, "Plaintiff was arrested, charged with a felony, and incarcerated." Pl.'s Resp. at 7. In order to establish a prima facie case of civil conspiracy, a plaintiff must show "(1) an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights and (2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement." *Scherer* v. *Balkema*, 840 F.2d 437, 441–42 (7th Cir. 1998). Defendants argue that there is no evidence in the record that any of the defendants reached an understanding to deprive Avila of a constitutional right.

In her response to defendants' motion for summary judgment, Avila once again argues that "[her] allegations *state* a conspiracy claim," Pl.'s Resp. at 7 (emphasis added), but cites no facts or evidence to support her allegations of an agreement among the defendants to deprive her of a constitutional right. Defendants' motion for summary judgment must therefore be granted as to Count III.

### IV. §1983 *Monell* Claim Against Maria Pappas as Cook County Treasurer

To prevail on a *Monell* claim, a plaintiff must show (1) that she suffered a constitutional injury and (2) that the defendant municipality authorized or maintained a custom of approving the unconstitutional conduct. *Thompson* v. *Boggs*, 33 F.3d 847, 859 (7th Cir. 1994). Defendants argue that Avila has failed to establish any of the elements of such a claim. In her response to

13

defendants' motion for summary judgment, Avila fails to address, let alone cite evidence in support of, her *Monell* claim. Finding no evidence in the record indicating that Maria Pappas or the defendant municipality authorized or maintained a custom of approving any unconstitutional conduct, the court must grant defendants' motion for summary judgment as to Count IV.

## V. State Law Claims for Malicious Prosecution

In Count V, Avila asserts state law claims for malicious prosecution against Vicky Pappas and Michael Shine. To prevail on a claim for malicious prosecution under Illinois law, the plaintiff must show "(1) he was subjected to judicial proceedings; (2) for which there was no probable cause; (3) the defendants instituted or continued the proceedings maliciously; (4) the proceedings were terminated in the plaintiff's favor; and (5) there was an injury." *Reed* v. *City of Chicago*, 77 F.3d 1049, 1051 (7th Cir. 1996). Defendants argue that there is no evidence in the record to support the second or third elements of the cause of action.

In her response to defendants' motion, Avila fails to cite evidence showing that defendants pursued criminal charges against Avila based on malice or personal animosity. Furthermore, the record provides ample support for the conclusion that defendants' actions with respect to Avila's prosecution were motivated by feelings and concerns other than malice. Defendants' motion for summary judgment must therefore be granted as to Count V.

## VI. Intentional Infliction of Emotional Distress

In Count VI, Avila alleges a claim for intentional infliction of emotional distress against Vicky Pappas and Michael Shine. In order to prevail on a claim for intentional infliction of emotional distress, a plaintiff must show (1) the conduct involved was truly extreme and outrageous; (2) the actors either intended that their conduct inflict severe emotional distress or

14

knew that there was at least a high probability that their conduct would cause severe emotional distress, and (3) the conduct in fact caused severe emotional distress. *Lewis* v. *Sch. Dist. #70*, 523 F.3d 730, 746 (7th Cir. 2008) (citations and quotation marks omitted). As the Seventh Circuit has explained, "This standard is quite high. In order to meet the threshold for intentional infliction of emotional distress, the defendant's conduct must extend beyond the bounds of human decency and be considered intolerable in a civilized community." Defendants contend, among other arguments, that Avila cannot establish that defendants' conduct was extreme and outrageous.

In her response, Avila fails to address her claim for intentional infliction of emotional distress. Finding no support in the record for the conclusion that any of defendants' conduct was extreme and outrageous or otherwise beyond the bounds of human decency, the court must grant their motion to dismiss as to Count VI.

## VII. Respondeat Superior and Indemnification Claims

In Counts VII and VIII, Avila alleges claims against Cook County for liability under the doctrine of respondeat superior and for indemnification pursuant to 745 Ill. Comp. Stat. 10/9-102. Avila neglects to address these claims in her response memorandum. Because Avila's other claims cannot survive defendants' motion for summary judgment, there is no underlying liability on which to base these derivative claims. *See, e.g.*, *Harsco Corp.* v. *Segui*, 91 F.3d 337, 349 (2d Cir. 1996) ("[T]here being no surviving underlying theory of liability, the respondeat superior claims were also properly dismissed."). The court must therefore grant defendants' motion for summary judgment as to Counts VII and VIII.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment [#103] is granted. Judgment is entered in favor of the defendants as to all counts of plaintiff's complaint. Case is terminated.

Dated: March 3, 2009                    Enter:_____
                                              JOAN HUMPHREY LEFKOW
                                                United States District Judge